STATE OF SOUTH CAROLINA )  C.A. NO.: 2013-CP-07--02105
                                          )
COUNTY OF BEAUFORT          )  IN THE COURT OF COMMON PLEAS

ALEXANDER WRIGHT,               )
                                             )
                        Plaintiff,    )
                                             )          **SUMMONS**
          vs.                            )    **(JURY TRIAL REQUESTED)**
                                             )      August _16_, 2013
TIMELESS INTERIORS, INC AND  )
HOLLY DIXON,                      )
                                             )
_____Defendants. )

TO THE DEFENDANTS ABOVE-NAMED:

          You are hereby summoned and required to answer the Complaint in this action, a copy of which is hereby served upon you, and to serve a copy of your Answer to said Complaint on the undersigned attorney at his offices at Post Office Drawer 1537, Beaufort, South Carolina, 29901, OR 10 Robin Drive, Suite 1, Lady's Island, Beaufort, South Carolina 29907 within thirty (30) days after the service hereof, or as otherwise set by the Court, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, Plaintiff in this action will apply to the Court for a judgment by default and the relief demanded in said Complaint.

                              PAUL H. INFINGER, LLC

                              By: _____
                              PAUL H. INFINGER
                              POST OFFICE BOX 1537
                              10 ROBIN DRIVE
                              BEAUFORT, SOUTH CAROLINA 29901
                              (843) 521-5015
                              ATTORNEY FOR THE PLAINTIFF
                              Bar # 02881

Beaufort, South Carolina
_August 16_, 2013

STATE OF SOUTH CAROLINA     ) C.A. NO.: 2013-CP-07--_02105_

                             )

COUNTY OF BEAUFORT        ) IN THE COURT OF COMMON PLEAS

                             )

ALEXANDER WRIGHT,         )

                             )

             Plaintiff,    )

                             )        C O M P L A I N T

vs.                            )    (JURY TRIAL REQUESTED)

                             )

TIMELESS INTERIORS, INC AND   )

HOLLY DIXON,              )

                             )

                 Defendants. )

TO:   THE ABOVE-NAMED DEFENDANTS, TIMELESS INTERIORS, INC AND
      HOLLY DIXON:

      COMES NOW, the Plaintiff, ALEXANDER WRIGHT, complaining of the

actions and inactions of TIMELESS INTERIORS, INCORPORATED AND HOLLY

DIXON the Defendants as follows:

## PARTIES AND JURISDICTION

      1.    That the Parties hereto, the subject matter hereof, and all matters

and things hereinafter alleged are within the jurisdiction of this Honorable Court.

      2.    That the Plaintiff, Alexander Wright, is now, and was at all times

material hereto, a citizen and resident of Beaufort County, South Carolina and

until May 8, 2012 an employee of Defendants pursuant to South Carolina Code

of Laws, including Title 41 - Labor and Employment, Section 41-1-10 to 41-10-

110, until unlawfully and wrongfully terminated on May 8, 2012.

      3. That, upon information and belief, the Defendant, TIMELESS

1

INTERIORS, INCORPORATED, (hereafter Defendant Interiors) is now, and was at all times material hereto, an incorporation organized and existing in the State of South Carolina and has its principal offices in and is doing business in Beaufort County, South Carolina and was the employer of Plaintiff at the relevant times referenced herein until his unlawful termination.

4.     That, upon information and believe, the Defendant, HOLLY DIXON, is now, and was at all times material hereto, a citizen and resident of Beaufort County, South Carolina and is the owner or co-owner of Defendant Timeless Interiors, Inc. and the employer/supervisor of Plaintiff at all relevant times referenced herein and was the author of all the unlawful documents coerced upon Plaintiff until his unlawful termination

5.     That, upon information and believe, the Defendant, JOHN DOE AND MARY ROE, are now, and were at all times material hereto,  citizens and residents of Beaufort County, South Carolina and co-owners of Defendant Timeless Interiors, Inc. and the employer of Plaintiff at the relevant times referenced herein until his unlawful termination.

## Facts

6.     That, upon information and belief, Plaintiff Wright began employment with Defendant Timeless Interiors and Defendant Holly Dixon on or about November 20, 2011 in Beaufort County, South Carolina earning $11.00 per hour, and Plaintiff was an Employee and Defendants were Employers at all times relevant to the issues herein in addition to and subject to Title 41 of the South Carolina Code Of Laws.

2

7.    From November, 2011 until his termination on May 8, 2012 Plaintiff Wright was employed on a full-time basis by Defendant Interiors and Defendant Holly Dixon as a delivery driver and an assistant for the purpose of moving and removing furniture and decorations in and out of homes offered for sale and other facilities for the purpose of enhancing and decorating the homes to represent what said properties offered for sale by third party owners could look like furnished.

8.    On information and belief an additional purpose of furnishing said properties could be to enhance and promote the sale of the furniture used in the mock furnishing.

9.    That on or about January 23, 2012 Plaintiff was driving a truck owned by Defendants in the course and scope of his employment and at the direction and with the permission of Defendant Interiors and Defendant Holly Dixon and other owners of Defendant Interiors; while driving the said truck it sustained damage to a front upper corner of the rear body top when it accidently struck a low hanging limb when Plaintiff moved over when  another oncoming truck approached too closely in a reduced passing space.  "Exhibit A"

10.    The damage to the truck was not believed to be major but the Defendant Interiors and Defendant Dixon and other owner managers immediately informed Plaintiff Wright that he was personally responsible to pay for the repair damages to the truck, though accidental, and that he would be terminated unless he signed a document prepared by Defendants shortly after the damage, agreeing to pay for the damages to the truck top by withholding

3

Thirty ($30.00) Dollars per week from his weekly pay-check (wages) for an unspecified time and agreeing to make an additional lump sum payment of an unknown amount from any tax refund he may receive for tax year 2011. The agreement to have monies deducted by Defendant Interiors was authored by Defendant Holly Dixon knowingly without the necessary Notice and terms required by South Carolina law and as such, was unlawful and all deductions for pay and repairs were in violation of Section.41-10-30 and 41-10-40, et al, of the South Carolina Code of Laws. Plaintiff was never told about nor agreed at the time of his employment in November, 2011 by Defendants that he would be personally financially responsible for any damages to any employer equipment while employed by Defendants and incurred in the ordinary course of his employment. As a result of the threat to terminate his employment and while under duress, Plaintiff signed the $30.00 per week deduction document and tax refund document prepared by Defendants on or about January 23, 2012, but said document did not contain specific terms of the debt amount, nature, cost of repairs, right to void the document, and other specifics of the deductions, and a regular weekly deduction of $30.00 was taken from his wages until his termination on May 8, 2012.  "Exhibit B"

11.    Plaintiff was not informed of the amount of the damages to the truck top, how long he would be paying for the damages, who would make the repairs, when the repairs would be completed, whether a claim would be filed against the other truck, whether there was any insurance coverage owned by Defendants on

4

the truck that would pay for the damages, or whether the document forced upon him was permissible as written under South Carolina law.

12.    On Tuesday, May 8, 2012 Plaintiff was called to the office of Defendants and there told by Defendant Holly Dixon and others, without prior notice and terms, that the weekly unlawful withholding of $30.00 per week taken from his wages since January 23, 2012, for payment of the truck damage would have to be increased to $75.00 per week. No reason was given for the proposed increase, no repairs had been made to the truck, and no accounting was made of the monies withheld. Again, the proposal to deduct additional funds was given by Defendant Dixon without stating the amount of the damages to the truck top, how long he would be paying for the damages, who would make the repairs, when the repairs would be completed, whether a claim would be filed against the other truck, and whether there was any insurance coverage owned by Defendants on the truck that would pay for the damages

13.    Plaintiff objected to the additional withholding increase from $30.00 to $75.00 per week on the grounds that would make it near impossible to pay his weekly financial obligations. He told Defendants he could not survive with a total withholding of $75.00 and could not agree to such withholding. Defendants told Plaintiff if he did not sign an agreement to pay the $75.00 they were going to fire him for not agreeing and were not going to pay him his last paycheck when scheduled so they could apply his wages to some unknown repair costs. Plaintiff told Defendants if they did not pay him his last paycheck when scheduled he would file a claim with the labor board or wage agency of South Carolina.

5

Plaintiff was then immediately told by Defendants that he was terminated and he was to leave the property.

14.    On May 8, 2012 Plaintiff immediately left the property and drove away. After approximately 15-30 minutes Plaintiff received a telephone call from a Defendant interior manager representative asking Plaintiff to return to the property. Believing that Defendants had reconsidered his termination and weekly withholdings of wages from his check, Plaintiff returned to the job site he had left just a short time earlier at the request of a company representative.. Upon driving . onto the property Plaintiff was approached by a Beaufort County Deputy Sheriff already there and was told that the Defendants had called them to complain about his trespass or intent to trespass on their property, which was false. He was further informed by the uniformed officer that he was trespassing upon Defendant's property and that upon any future return he would be prosecuted for trespass.   Plaintiff was required to sign and given a copy of a "TRESPASS AFTER NOTICE" document of the Beaufort County Sheriff's Office dated May 8, 2012 already signed by the property owners or their representatives, by an a person whose signature is illegible, and by Eric Washington, and then signed by Deputy Sheriff PFC Rates and acknowledged by Plaintiff. That Defendants knew that Plaintiff had not trespassed upon their property and was there at their devious invitation as an ulterior motive and purpose to intimidate Plaintiff so that the Deputy Sheriff could see Plaintiff at the property and intimidate and serve him with a Legal Notice of Trespass.   "Exhibit C"

15.    Plaintiff did not voluntarily quit his job or leave under any condition other than he was involuntarily terminated by Defendants for refusing to agree to their terms and he left the property at that time. Despite repeated requests by Plaintiff for Defendants to pay his wages to him, Defendants did not give Plaintiff his final wages, did not inform him when he would receive the final pay check, and did not inform him when or where his finial check would be mailed to him, if he was to pick his check up, or whether he would even be paid. Plaintiff continually requested by telephone that Defendant Interior pay the unpaid wages by calling the office and was told again that he would not be paid his final wages, he was not to come back to the property, but those wages would be applied to the truck damage and their legal counsel had told them they did not have to pay his final wages.    "Exhibit D"

16,    Plaintiff is informed and believes that his implied contract of employment was breached and he was terminated  on May 8, 2012 by Defendants, specifically Defendant Holly Dixon, in violation of public policy, because the deductions were unlawful and he objected to the $30.00 per week wage deduction and the proposed additional $45.00 per week deduction, total $75.00, and he informed them he intended to report their actions by making a claim with the labor board or wage agency of South Carolina.  Plaintiff is also further informed and believes he was terminated in part because he had information regarding his overtime work and overtime work by his co-workers who worked more than 40 hours in a week and qualified to receive overtime but

7

did not get paid any overtime for overtime work and they are not exempt employees, in violation of the wage and payment laws.

17.    Prior to May 23, 2012, Plaintiff filed a complaint with the South Carolina Department of Labor, Licensing, and Regulation against Defendant Timeless Interiors, Inc., based upon the facts set out above and specifically for making illegal withholdings for the damages to the truck and failure to pay Plaintiff's past due wages. As a result of its investigation the SCDLL&R issued its findings of its investigation on September 13, 2012 and by additional findings stated that Plaintiff received a check on (Friday), May 4, 2012 and was fired on (Tuesday) May 8, 2012 but no further wages were paid due to (monies) still owing Defendant for the damages to the truck. The SCDLL&R made further findings that the terms of the wage deductions were not given Claimant by Plaintiff. Plaintiff demands an accounting of the past due wages he earned prior to his termination date and also all the monies illegally withheld from his wages for damage to the truck that he had not agreed to pay at the time of his employment. Said wages and illegal withholdings still have not been paid by Defendant Interiors to Plaintiff despite sanctions by the SCDLL&R issued on September 21, 2012. Sanctions were issued by the SC Department of Labor, Licensing, and Regulation on September 13, 2012, for failure to provide the terms of Plaintiff's employment pursuant to Code Section 41-10-80 (A) referencing Section 41-10-30 and 41-10-40 shown as Report Number 2012-389 and on September 21, 2012 a letter statement of Plaintiff's right to pursue past due wages was issued pursuant Section 41-10-80(C) of the SC Code of laws.

8

18.     Plaintiff also filed for State unemployment payments on May 9, 2012 which were contested by Defendants on the false and fraudulent grounds that he had voluntarily quit his job.

19.     That due to the unlawful refusal of Defendant Interior, Defendant Dixon, and any other Defendant  (1) to pay Plaintiff his lawful wages when due; (2) making unlawful payroll deductions for the alleged repair bills for a company truck for an on the job accident without any pre-employment Notice or terms for deductions; (3) devising a scheme to set Plaintiff up  to an unlawful confrontation with the Beaufort County Sheriff's Office in order to embarrass and harass him and waste taxpayers money by such a farce and abuse of process; (4) failure to pay overtime wages; and  (5) the wrongful discharge of Plaintiff by and through unlawful, fraudulent, wasteful, and false means related to unlawful wage deductions and in violation of public policy, Plaintiff is entitled to;

(a) three times the full amount of the unpaid wages, plus unpaid interest, including all wages and damage deductions unlawfully withheld during his employment and  payment of all  costs and attorney fees in pursuing the wages and costs;  and

(b) further Plaintiff is entitled to treble the amount of all past due wages held unlawfully for vehicle repairs; all past and future benefits and past and future lost wages as a result of his wrongful discharge on May 8, 2012, to present; and

(c) in addition, damages for past due and future embarrassment and humiliation for being set up to have a confrontation with a Beaufort County

Deputy Sheriff based on false reports and accusations to the BCSO that Plaintiff was trespassing on Defendant's property; and

(d) lost wages and benefits for wrongful discharge and false accusations by Defendants to the SC Department of of Employment and Workforce that Plaintiff quit his employment which resulted in a denial of his unemployment benefits when Plaintiff was actually terminated from his job for refusing to agree to further illegal deductions from his wages, in violation of public policy and the applicable statutes;

(e) all past due overtime pay with penalties and cost and expenses and attorney fees; and

(f) all applicable past due and future lost wages, interest, benefits and monies lost as a result of his wrongful discharge based upon unlawful wage withholdings, intimidation to deduct additional wage amounts, hostile work environment, all of which are in violation of public policy.

20.    At all times relevant to this Complaint, Plaintiff was a non-exempt employee for purposes of the Fair Labor Standards Act and an employee pursuant to South Carolina Code of Laws, Title 41 - Labor and Employment, Section 41-1-10 to 41-10-110.

21.    During his employment with Defendants, Plaintiff would sometimes work in excess of forty (40) hours per week, generally working one a full twenty-four (24) hour shift every third day, totaling 48-hours or 72-hours per work week, depending on whether the week was considered a "short week" or a "long week Plaintiff did not receive the correct over-time pay as required by the FLSA.

10

FOR A FIRST CAUSE OF ACTION
(Violation Sections 41-10-1 through 41-10-110)
Payment of Wage Law

22.    Plaintiff incorporates and references all of Paragraphs 1-21 hereinabove the same as if they were set forth here as part of this First Cause Of Action, and further alleges:

23.    At all times during his employment with Defendants relevant to this Complaint, Plaintiff was regularly engaged in driving, loading, unloading and delivering furniture and decorating items and being paid $11.00 per hour for up to 40 hours.

24.    Following an accidental brush with a tree limb on or about January 23, 2012 while Plaintiff was driving a truck of Defendant in the course and scope of his employment and at the direction and with the permission of Defendant Interiors and Defendant Holly Dixon and other owners of Defendant Interiors, Plaintiff was unlawfully and falsely mislead to believe that he would personally be liable for the damage to the truck and that he would be terminated unless he signed a document prepared by Defendants agreeing to pay for the damage to the truck top by withholding Thirty ($30.00) Dollars per week from his weekly pay-check (wages) and agreeing to make a future payment of a lump sum payment of an unknown amount from any tax refund he may receive for tax year 2011, all in violation of Sections 41-10-1 to 41-10-110 of the South Carolina Code of Laws, and specifically 41-1-30 and 41-10-40..

25.    Plaintiff was never notified or informed by Defendants in writing or by any other means prior to or at the time of his employment in November, 2011,

11

or thereafter, that he would be personally and financially responsible to pay by wage withholding or from any other funds, for any damages to any employer equipment incurred in the ordinary course of his employment, and the withholdings by Defendants were and are in violation of Title 41, Code Section 41-10-80 (A) referencing Section 41-10-30 (A) shown as shown in Report Number 2012-389 of the SCLLR and Section 41-10-80(C) et al, of the South Carolina Code of Laws. As a result of the threat to terminate his employment in violation of public policy and while under duress for threatening his employment, Plaintiff signed the $30.00 per week deduction document and tax refund document prepared by Defendants and a regular weekly deduction of $30.00 was taken from his wages until his termination on May 8, 2012, all in violation of Sections 41-10-30, 41-10-40, 41-10-50, 41-10-180, et seq. of the South Carolina Code of Laws

26.    Plaintiff was not informed of the amount of the repair damages to the truck top, how long he would be paying for the damages, who would make the repairs, when the repairs would be completed, whether a claim would be filed against the other truck, whether there was any insurance coverage owned by Defendants on the truck that would pay for the damages, or whether the document forced upon him was permissible as written under South Carolina law, in violation of Sections 41-10-41 through 10-110 of the South Carolina Code of Laws. Plaintiff was routinely required to work "off the clock" and not paid overtime. At all times relevant to this Complaint, Plaintiff was a good and faithful employee of Defendant and consistently performed all of the essential functions

of his jobs in an acceptable and competent manner in accord with his implied contract of employment. On information and belief Defendants withheld his final paycheck wages of $287.10 in addition to additional wages of $30.00 per week for an additional $420.00 for "damage repairs".

27.    Defendants have failed to pay Plaintiff's unlawfully withheld wages or illegally withheld "repair" monies since he was terminated on May 8, 2012, in violation of Sections 41-10-1 through 41-10-110 of the South Carolina Code of Laws and in contravention of the written directive of the SC Department of Labor, Licensing, and Regulation. As a result of these violations of South Carolina Labor Law by Defendants', Plaintiff is entitled to recover from Defendants, jointly and severally, the full withheld amounts of $707.00 trebled as the value of all unpaid wages owed to him and repair monies, plus interest, plus reasonable attorney's fees, and the costs of the action, pursuant to South Carolina Code of Laws §§ 41-10-1 through 41-10-110, and specifically §§ 41-10-10, 43-10-30, 41-10-40 and 41-10-80, et al.

## FOR A SECOND CAUSE OF ACTION
### (Wrongful Discharge )

28.    Plaintiff incorporates and references all of Paragraphs 1-27 hereinabove the same as if they were set forth here as part of this Second Cause Of Action, and further alleges:

29.    Plaintiff was hired by Defendant Employers in or about November 2011 at the wage rate of $11.00 per hour. On or about January 23, 2012 while Plaintiff was driving a truck of Defendant in the course and scope of his

13

employment when the corner top of the truck was accidently damaged. Plaintiff was falsely told that he would personally be liable for the damage to the truck and that he would be terminated unless he signed a document prepared by Defendants agreeing to pay for the damage to the truck top by withholding Thirty ($30.00) Dollars per week from his weekly pay-check (wages) and agreeing to make a future payment of a lump sum payment of an unknown amount from any tax refund he may receive for tax year 2011, all in violation of Sections 41-10-1 to 41-10-110 of the South Carolina Code of Laws.

30.    As a result of the threat to terminate his employment and while under duress, on or about January 12, 2012 Plaintiff signed the $30.00 per week deduction document and tax refund document prepared by Defendants and at the time of his termination on May 8, 2012 Defendants had withheld his final paycheck wages of $287.10 in addition to wages of $30.00 per week deductions for an additional $420.00 for "damage repairs" withholdings taken from his wages, all in violation of Section 41-10-30, 41-10-40, 41-10-50, 41-10-80, and 41-10-100, et al, of the South Carolina Code of Laws and in violation of public policy, and Defendants then proposed an additional weekly increased withholding of $45.00.

31.    Four months later, on Tuesday, May 8, 2012, Plaintiff was called to the office of Defendants and there told by Defendant Dixon and others without prior notice that the weekly withholding of $30.00 per week for payment of the truck damage would have to be increased to $75.00 per week. No reason was given for the proposed increase and no repairs had been made to the truck, all in

14

violation of Sections 41-10-10 through 41-10-110 of the South Carolina Code of Laws. As a result of Plaintiff's objections to deductions from his wages of unknown repair costs for accidental damage to the Employer's truck, Plaintiff was terminated by Defendants.

32.    Plaintiff was not informed of the amount of the damages to the truck top, how long he would be paying for the damages, who would make the repairs, when the repairs would be completed, whether a claim would be filed against the other truck, whether there was any insurance coverage owned by Defendants on the truck that would pay for the damages, or whether the document forced upon him was permissible as written under South Carolina law, in violation of Sections 41-10-10 through 10-110 of the South Carolina Code of Laws.

33.    Plaintiff's termination was in violation of a clear mandate of public policy in that his termination was as a result of the refusal of Plaintiff to agree to a violation of the South Carolina Payment of Wages Act, Code Section 41-10-1 to 41-10-110 and the statutory rights of Plaintiff pursuant to SC Code Section 16-17-10, 16-7-500, specifically including violations of Code Section 16-17-10, et al, involving issues of Barratry.

34.    That Plaintiff was additionally terminated unlawfully when he refused to agree to the further violation of the Payment of Wage Laws of South Carolina where the wage deductions by Defendants were unlawful and not authorized pursuant Code Section 41-10-100, nor permitted pursuant Code Section 41-10-100 of the Payment of Wage Laws, which provide:

"SECTION 41-10-30. Notification to employees of wages and hours agreed upon; recordkeeping requirements; requirement of itemized statement of gross pay and deductions for each pay period.

(A) Every employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from the wages, including payments to insurance programs. The employer has the option of giving written notification by posting the terms conspicuously at or near the place of work. Any changes in these terms must be made in writing at least seven calendar days before they become effective. This section does not apply to wage increases.

(B) ...

(C) Every employer shall furnish each employee with an itemized statement showing his gross pay and the deductions made from his wages for each pay period.

SECTION 41-10-40. Medium of payment; deposit of wages to employee's credit; prohibition against deductions in absence of written notice; time and place of payment.

(A) Every employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday.

(B)...

(C) An employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of Section 41-10-30.

(D) Every employer in the State shall pay all wages due at the time and place designated as required by subsection (A) of Section 41-10-30.

SECTION 41-10-100. Prohibition against private agreements which contravene chapter.

No provision of this chapter may be contravened or set aside by a private agreement."

35.    That as a result of Plaintiff's wrongful termination he has lost

wages, employment benefits, interest, and had other losses since May 8, 2012 at

an hourly rate of $11.00 per hour, plus overtime, wage increases, and the like., in addition to attorney fees and costs and expenses.

### FOR A THIRD CAUSE OF ACTION
(Making False And Fraudulent Statements
To The South Carolina Department Of
Employment And Workforce)

36.    Plaintiff incorporates and references all of Paragraphs 1-35 hereinabove the same as if they were set forth here as part of this Third Cause Of Action, and further alleges:

37.    Following his unlawful termination of employment by Defendants for objecting to their withholding portions of his wages for accidental damages to a company truck, in violations o the South Carolina Payment of Wages Law, Plaintiff filed for unemployment with the South Carolina Department of Employment and Workforce, alleging he was fired without just cause and excuse, in violation of public policy.

38.    Defendant Employers falsely and fraudulently reported to such agency that Plaintiff had voluntarily resigned, which led that agency to disqualify him from employment benefits.

39.    However, even a cursory and surely a proper investigation by the South Carolina Department of Employment and Workforce would have revealed the unlawful deduction of wages from Plaintiff's paycheck and Plaintiff's rejection of Defendants' new proposal to deduct additional amounts would have been a logical, though unlawful, reason, for termination of Plaintiff without cause, as

17

opposed to his voluntarily quitting, in violation of public policy. However, even if Plaintiff had voluntarily quit his employment, which is denied, the reason would have been that he was employed in a workplace with a hostile work environment created by Defendant Employers, in violation of the applicable laws. Defendants harassed and coerced its employees with threats of termination, illegal wage deductions, and untrue accusations of work errors and quitting an employment under those circumstances involving a hostile work environment do not disqualify an employee from unemployment benefits. .

40.    As a result of the false and fraudulent representations to the Department of Employment and Workforce that Plaintiff had voluntarily resigned, which led that agency to disqualify him from employment benefits, Plaintiff has lost unemployment benefits since May 8, 2012, to present, and is entitled to full reimbursement of such benefits, excluding wages earned during that period of time and such other damages and costs as are applicable and to this cause of action and the unlawful acts of Defendants, including attorney fees, costs and expenses of this action. .

### FOR A FOURTH CAUSE OF ACTION
(Making False And Fraudulent Statements
To The Beaufort County Sheriff's Office of Trespass)

41.    Plaintiff incorporates and references all of Paragraphs 1-40 hereinabove the same as if they were set forth here as part of this Fourth Cause Of Action, and further alleges:

18

42.    Following his unlawful termination on May 8, 2013, Plaintiff immediately and peacefully left the property of Defendants and drove away. After approximately 15-30 minutes Plaintiff received a telephone call from a Defendant Interior representative asking Plaintiff to return to the property. Believing that Defendant's has reconsidered the termination of his employment, which he needed, and the unfairness of the weekly withholdings of wages from his check, Plaintiff agreed to return to the office of his employer.

43.    Plaintiff returned to the job site he had left just a short time earlier at the request of a company representative. Upon driving onto the property Plaintiff was approached by a Beaufort County Deputy Sheriff already there and told that the Defendants had called them to complain about his trespass or intent to trespass on their property, which was false.

44.    Plaintiff was further informed that he was trespassing upon Defendants' property and that upon any future return he would be prosecuted for trespass.  Plaintiff was required to sign and given a copy of a "TRESPASS AFTER NOTICE" document of the Beaufort County Sheriff's Office dated May 8, 2012 already signed by the Defendant property owners or their representatives, "unknown signature"  and  Eric Washington, and then signed by Plaintiff and Deputy Sheriff  PFC Rates, which false report amounted to an abuse of process..

45.    Defendants made false and fraudulent accusations to the Beaufort County Sheriff's Office of an alleged  trespass onto Defendants' property by Defendant for the sole purpose of embarrassing, intimidating, harassing, and humiliating Plaintiff in front of Defendants' Employees and the Beaufort County

19

Deputy Sheriff's in order to show to Defendants' employees that when an employee objected to an Employers' unlawful action or when Employer violated a law, such as a violation of the Payment of Wages Law, that Employer would deceive the Sheriff's Department in order to use that law enforcement agency to harass their employees. Further, Defendants had pre-planned the termination of Plaintiff and anticipated that he would want to receive his final pay and Defendants intended not to pay Plaintiff, so they willfully and wantonly used the Sheriff's office to intimidate Plaintiff as an ulterior motive to scare Plaintiff into not returning to the office at any time to request his final pay, when Defendants knew that Plaintiff was not trespassing and was at Defendants' place of business as a result of their express invitation and Defendants' purposely and fraudulently used the legal process offered by the Sheriff's office to alleged a trespass when such was not true.

46.     That a result of such abuse of process, negligent and reckless misrepresentations, and false and fraudulent actions and deception practiced on Plaintiff and the Beaufort County Sheriff's Office, Plaintiff was embarrassed, intimidated, harassed and humiliated, resulting in mental anguish and confusion, and resulting damages, attorney fees, costs of this action. .

FOR A FIFTH CAUSE OF ACTION
(FAILURE TO PAY BACK PAY AND OVERTIME WAGES
AND OVERTIME VIOLATION:
Title 41 - Labor and Employment
Code of Laws Title 41 - Labor and Employment15)

47.     Plaintiff repeats and realleges each and every allegation of

Paragraphs 1-46 as if restated herein verbatim.

48.    Plaintiff was an employee of Defendant for purposes of the Fair Labor Standards Act during times relevant to this Complaint.

49.    Defendant failed to pay Plaintiff at the rate of one-and-a-half times his normal rate of pay for all hours worked in excess of forty (40) hours per work week as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

50.    Defendant also failed to pay Plaintiff for all compensable time for which Plaintiff provided work for the benefit of Defendant.

51.    Plaintiff is entitled to back wages at the rate of one-and-a-half times his regular rate of pay for all overtime hours worked in excess of forty (40) hours per week,   pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

52.    Plaintiff repeatedly asked Defendants to pay him for his work, but Defendants refused to pay Plaintiff and when Plaintiff repeatedly asked for his overtime wages he was fired.

53.    No complaint or allegation was made by Defendants to the SC Department of Labor, Licensing, and Regulation office that plaintiff had been a poor employee, or had ever threatened anyone, or caused a discipline problem at the workplace, but only the false accusation that he had quit his job.

54.    Defendants have never paid Plaintiff, have continually refused to pay Plaintiff, and continue to refuse to pay him his full wages and applicable overtime resulting in this law suit.

55.    Furthermore, upon information and belief, Defendants have engaged in a pattern of similar conduct, luring other vulnerable employees

21

under the promise of pay overtime, directing them to work such hours and perform such tasks as Defendants specified, including defacing and damaging furniture and tables.

56.    Plaintiff worked in excess of forty hours in a workweek in violation of the FLSA, 29 U.S.C. § 207.

57.    Defendants' violations of the FLSA, as described herein, were willful and intentional.

58.    Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages, overtime wages, an additional equal amount as liquidated damages, reasonable attorney's fees, and the costs of the action, pursuant to 29 U.S.C. § 216(b), in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

### 1.    VIOLATION OF THE PAYMENT OF WAGES ACT

(a) three times the full amount of the unpaid wages, plus unpaid interest, including all wages and damage deductions unlawfully withheld during his employment and  payment of all  costs and attorney fees in pursuing the wages and costs;  and

(b) further Plaintiff is entitled to treble the amount of all past due wages held unlawfully for vehicle repairs; all past and future benefits and past

and future lost wages as a result of his wrongful discharge on may 8, 2012, to present; and

### 2.        WRONGFUL DISCHARGE

(a)  all applicable past due and future lost wages, interest, benefits and monies lost as a result of his wrongful discharge based upon unlawful wage withholdings, intimidation to deduct additional wage amounts, hostile work environment, all of which are in violation of public policy; and

### 3.     FALSE AND FRAUDULENT STATEMENTS TO THE SC DEPARTMENT OF EMPLOYMENT AND WORK FORCE

(a)     All lost unemployment and wage benefits since May 8, 2012, to present, and is entitled to full reimbursement of such benefits, costs and expenses and attorney fees, excluding wages earned during that period of time.

### 4.        ABUSE OF PROCESS ---
### HUMILIATION AND EMBARRASSMENT

(a)     Plaintiff was embarrassed, intimidated, harassed and humiliated, resulting in mental anguish and confusion, and resulting damages, attorney fees, costs of this action. Plaintiff was damaged by this abuse of process resulting in past due and future embarrassment and humiliation for being set up to have a confrontation with a Beaufort County Deputy Sheriff based on false

reports and dialogue with the BCSO that Plaintiff was trespassing on Defendant's property; and

### 5.         BACK PAY AND OVERTIME PAY  --
### FLSA SECTION  29 USC 216

(a)    all unpaid overtime pay wages and  an  additional  equal  amount as liquidated damages and attorney fees  costs and expenses.

Such other and further relief and damages as to each cause of action as the statutes provide and as this Court deems reasonable, necessary and proper.

PAUL H. INFINGER, LLC

By:_____

PAUL H. INFINGER
POST OFFICE BOX 537
BEAUFORT, SOUTH CAROLINA 29901
10 ROBIN DRIVE, SUITE 1 29907
(843) 521-5015/ Fax 521-5042,C 812-9450
ATTORNEY FOR THE PLAINTIFF WRIGHT

Beaufort, South Carolina,

August _____, 2013

24



Exb. A

# Timeless Interiors

I _Alex Wright_ Accept full Responsibility for the damage to the corner of the right side of the truck, of Timeless Interiors delivery truck. On the week of 1/23/2012. I was driving the truck that hit a tree branch while passing another vehicle. I agree to pay 30 dollars a week, out of my pay check. Until I get my taxes back to pay the remainder of the damage on the truck. Money will be withheld from my pay check until my taxes come in.

SINGATURE _____    DATE 1-26-12

WITNESS _____

WITNESS _____

Agreement

Exb. B
E 1-1

Jun 13 12 01:31p    Timeless Interiors    843-837-8089    p.2

# BEAUFORT COUNTY SHERIFF'S OFFICE

## TRESPASS AFTER NOTICE

This is a formal notice of trespass. The property owner or agent has requested the Beaufort County Sheriff's Office to issue a Trespass Notice to you. You are hereby formally notified of their intent of prosecution if you return to this property.

Date: 5-8-10

Subject Name: WRIGHT  ALEXANDER  JAMES

Address: 76  SIMS FEED PLACE, HARDEEVILLE SC 29927

D.O.B. 7-15-1978    S.S.#: _____    Race B    Sex M

D.L./I.D.# 007930384    State SC

Comp./Business Name: TIMELESS  INTERIORS

Address: 1204  FORDING  ISLAND  RD  BLUFFTON SC 29910

South Carolina State Statute 16-11-620
    Entering premise after warning or refusing to leave on request: jurisdiction and enforcement.

    Any person who, without legal cause or good excuse, enters into the dwelling house, place of business, or on the premise of another person after having been warned not to do so or any person who, having entered into the dwelling house, place of business or on the premise of another person without having been warned fails and refuses, without good cause or good excuse, to leave immediately upon being ordered or requested to do so by the person in possession or his agent or representative shall, on conviction be not fined more than two hundred twenty five dollars ($225.00) or imprisoned for not more than thirty (30) days

I forbid the above listed subject to enter or be about the above property, and will prosecute said subject if he/she is about the property. I attest that I am the property owner, or acting as representative or agent for said property owner.

Signature of Property Owner: _____ Eric Washington
I affirm that I have received a copy of this notice.

Signature of Subject _____

Witness: PFC Smith    Case Officer PFC Bates

BCSO Case Number    20120508-536

*Exb. C*

**Serrena Swartz**

| | |
|---|---|
| From: | Timeless Interiors, Inc. [mail@timelessinteriorshiltonhead.com] |
| Sent: | Wednesday, September 12, 2012 3:57 PM |
| To: | Serrena Swartz |
| Subject: | Re: truck damage estimate |
| Attachments: | estimate on truck damage by Alex 9.12.12 001.tif; Estimate on truck damage by Alex 9.12.12 002.tif; Great Dane estimate on truck damage by Alex 9.12.12 001.tif |

Serrena,
Please see attached estimates from Great Dane and Roberts Truck Center on damages to truck. We have not yet had the repairs done because Holly said she is waiting to see if she is able to get the money from Alex for the damages done. I hope that you will be able to close out this file now. Let me know if you need anything else.

Melanie
Timeless Interiors, Inc.

On Fri, Sep 7, 2012 at 2:44 PM, Serrena Swartz <Serrena.Swartz@llr.sc.gov> wrote:

Thank you and have a great weekend!!

From: Timeless Interiors, Inc. [mailto:mail@timelessinteriorshiltonhead.com]
Sent: Friday, September 07, 2012 2:18 PM
To: Serrena Swartz
Subject: truck damage estimate

Serrena,
Please see attached truck damage estimate.
Thank you,

Debbie for Holly Dixon

Holly Dixon, President
Timeless Interiors, Inc.
1204-G Fording Island Road
Bluffton, SC 29910
843-837-8088 phone
843-837-8089 fax

*Exhibit D*

1



Sep. 12. 2012 1:35PM                                                      No. 4913   P. 1

Roberts Truck Center
501 Bourne Avenue
Garden City, Ga., 31408-7366
Tel: 912-964-5507  Fax: 912-430-0565

*Estimate - Preliminary*

Estimate Prepared by: Richard                          Appraised for:

Accident Date:                                         Date: 4/10/2012
Date of Loss:                                          Estimated:
Arrival Date:
Type of Loss:
Policy Number:
Claim Number:

Insured:

Company: Timless Interiors
Telephone, Fax: 843-837-8088
                8089

| Year | Make | Model | Color | Trim |
|------|------|-------|-------|------|
| 2001 | CHASSIS MOUNTED BEDS | DRY VAN | Scarlett/VIN# | |
| Unit Number | License Plate # | Mileage | UB281095769VQ7 | |

| Sup | Seq | Labor Type | Labor Op | Description | Part Type | Part Number | Dollar Amount | Labor Units |
|-----|-----|------------|----------|-------------|-----------|-------------|---------------|-------------|
| | 1 | Body | Rem/Rep | Cap, Corner L | New | N.A. | | 2.5 |
| | 2 | Body | Rem/Rep | Panel, Crown/Top Rail | New | N.A. | $379.82 T | 4.0* |
| | 3 | Body | Rem/Rep | Rail, Top 24 Foot Length R | New | N.A. | $569.92 T | 3.0* |
| | 4 | Body | Rem/Rep | Rail, Top Foot Length L | New | N.A. | $568.00 T | 3.0* |
| | 5 | Body | Rem/Rep | Bow, Roof Alum Gusset | New | N.A. | $89.31 T | 1.10* |
| | 6 | Body | Rem/Rep | Bow, Roof Alum | New | N.A. | $26.73 T | 1.69* |
| | 7 | Body | Rem/Rep | Bow, Roof Alum | New | N.A. | $26.73 T | 1.16* |
| | 8 | Body | Rem/Rep | Bow, Roof Alum | New | N.A. | $26.73 T | 1.16* |
| | 9 | Body | Rem/Rep | Bow, Roof Alum | New | N.A. | $26.73 T | 1.16* |
| | 10 | Body | Rem/Rep | Bow, Roof Alum | New | N.A. | $26.73 T | 1.18* |
| | 11 | Body | Rem/Rep | 1 Moulding 59 | New | | $224.23 T | |
| | 12 | Body | Rem/Rep | Adhesive, Panel Bonding | New | N.A. | $38.00 T | |
| | 13 | Body | Rem/Rep | Roof 24 Foot Length | New | N.A. | $424.00 T | 6.0* |

* - Judgement Item
N - Labor Note Applied

| Labor | | | | | Parts | |
|-------|---|---|---|---|-------|---|
| Body | | 25.1 | Hrl @ | $85.00 | Parts Subtotal | $2,626.93 |
| Labor Total | | | | $2,133.50 | Less Adjustments | |
| | | | | $2,133.50 | Parts Total | $2,626.93 |

Additional Costs and Operations

| Version | 3.0 | TruckEst is a Trademark of Mitchell International | Page | 1 of 2 |
|---------|-----|------------------------------------------------|------|--------|
| Database Edition | PMT 11-01 | ©1993-2012 Mitchell International, Inc. | | |
| | | All Rights Reserved. | | |

*Exb. D-1*

*E 4-2*

*Estimate #2*



Sep. 12, 2012  1:35PM                                                    No. 4913   P. 2

| Seq | Seq | Labor Type | Labor Op | Description | Part Type | Part Number | Dollar Amount | Labor Units |
|-----|-----|-----------|----------|-------------|-----------|-------------|---------------|-------------|
| | | | | | Addl. Costs/Opt Total | | | $0.00 |

Tax

Parts Tax  @  7.00%  $183.89

Tax Total                        $183.89

Totals

Sub Total:      $4,944.34
Customer Resp.      $0.00

Net Total                    $4,944.34

The above is an estimate based on the inspection and does not cover any additional parts or labor which may be required after the work has started. Occasionally, worn or damaged parts are discovered which may not be evident on the 1st inspection. Because of this, the above prices are not guaranteed. Operations on parts and labor are current and subject to change.

This is a preliminary estimate. Additional changes to the estimate may be required for the actual repair.

TruckEst does not automatically include items required by many business repair partners. This application allows the author to manually enter line items such as overlap deductions.

2003 CHASSIS MOUNTED BEDS DRY VAN

| Version | 3.0 | TruckEst is a Trademark of Mitchell International | Page 2 of 2 |
| Database Edition | PIHT 11-04 | ©1998-2012 Mitchell International, Inc. | |
| | | All Rights Reserved. | |

Estimate  #2

EXb. D-2
E 4-3

2012  13:32                                                      #1508 P. 001/001

**Great Dane Trailers**
400 H, Lathrop Avenue
Savannah, GA 31401
Phone: (912) 644-2333

Repair Estimate

Date:  4/XX/2012

Name:  TIMELESS INTERIORS
Address:
        ATT, ERIC
Phone:  843-422-7188
Fax:    843-837-0085

Year:        7 ул Make:      MICKEY
Serial No:   5303V07
Model No:    VD2810R
Type:        T/BODY
Unit No:     1

| DESCRIPTION OF WORK TO BE PERFORMED | PARTS | LABOR HOURS |
|---|---|---|
| REPLACE L/SIDE METAL CORNER CAP WITH M LITE | $109.10 | |
| REPLACE MISSING M LITE ON INSIDE CORNER CAP | $10.71 | |
| REPLACE ALUM ROOF RADIUS | $180.13 | |
| REPLACE FRONT ROOF BRACE | $50.94 | |
| REPLACE L/SIDE TOP RAIL WITH 2- M LITES AND BAR WIRE HARNESS | $610.41 | |
| REPLACE 25' ALUM ROOF SHEET REBOND TO ROOF BOWS | $325.20 | |
| R&R 4 PIECES OF PLYWOOD ON I/SIDE TO MAKE REPAIRS | | |
| | | |
| 7 - ROOF MOULDING | $49.83 | |
| RIVETS, FASTENERS | $40.80 | |
| SEALER ROOF COATING, ROOF TAPE | $91.25 | |
| | | |
| MIS SHOP SUPPLIES | $100.00 | |
| | | |
| FREIGHT | $160.00 | |
| | | |

| Note:  The above estimate, based on our inspection, doesn't cover additional parts or labor which may be required under each, has started out in hidden damage. This estimate is good for only 30 DAYS from date listed above. | TOTAL LABOR | | $2,018.00 |
|---|---|---|---|
| | TOTAL PARTS | $1,688.42 | |
| OPEN ITEMS: | TOTAL BEFORE TAX | | $3,702.42 |
| Approval for repair: | SALES TAX | $0.00 | |
| | TOTAL WITH TAX | | $3,603.07 |

*Estimate #1*

*Exb. D-3*
*E 4.1*

**TRAILCO OF GEORGIA INC - SAVANNAH**

125 DISTRIBUTION DR, GARDEN CITY, GA 31408

| Phone # | Fax # | Website |
|---------|-------|---------|
| 912-966-7799 | 912-766-7266 | www.trailcogroup.com |

Bill To

TIMELESS INTERIORS
1247 FORDING ISLAND RD
BLUFFTON, SC 29910

**Estimate**

| Estimate # | GA6E-0000339 |
|------------|--------------|
| Date: | 08/20/2012 |

| Unit Id: | Make: | VIN # | MFG DATE |
|----------|-------|-------|----------|
| 1 | MCKBD | 8309V07 | 2007 |

| QTY | LABOR COST | PARTS COST | WORK TO BE PERFORMED | AMOUNT |
|-----|-----------|-----------|---------------------|--------|
| 18.00 | $45.00 | | REPLACE TOP RAIL LS AND RS | $810.00 |
| 3.00 | $45.00 | | REPLACE CORNER CAP LS AND RS | $135.00 |
| 6.00 | $45.00 | | REPLACE COMPLETE ROOF | $270.00 |
| 0.50 | $45.00 | | REPLACE STARTER ROOF BOW | $22.50 |
| 0.50 | $45.00 | | REPLACE ROOF BOW | $22.50 |
| 4.00 | $45.00 | | REPLACE RADIUS PANEL | $180.00 |
| 1.00 | $45.00 | | PANEL PATCH LS | $45.00 |
| 1.00 | $45.00 | | S/A DOOR LOCKING BAR RS | $45.00 |
| 2.00 | $45.00 | | S/A AND WELD BOTTOM RAIL RS | $90.00 |
| 2.50 | $45.00 | | REPLACE 5 MARKER LIGHTS | $112.50 |
| 0.50 | $45.00 | | DOOR HINGE | $22.50 |
| | | | Labor Subtotal | $1,755.00 |
| 2.00 | | $516.40 | TOP RAIL | $1,232.80 |
| 1.00 | | $56.32 | CORNER CAP | $56.32 |
| 24.00 | | $15.50 | 71 - ROOF SECTION ALUM PER FT | $372.00 |
| 1.00 | | $35.49 | 71 - ROOF SEALANT GRAY SEAL-GAP | $35.49 |
| 1.00 | | $53.82 | STARTER ROOF BOW | $53.82 |
| 1.00 | | $23.77 | ROOF BOW | $23.77 |
| 1.00 | | $193.65 | RADIUS PANEL | $193.65 |
| 1.00 | | $21.00 | 71 - SIDE PANEL PATCH ALUM | $21.00 |
| 5.00 | | $6.02 | 34 - LIGHT RECTANGLE YELLOW 3 INCH BULK | $30.10 |
| 5.00 | | $3.05 | 34 - LIGHT MOUNTING BRACKET MODEL 19 | $15.25 |
| 1.00 | | $33.24 | DOOR HINGE | $33.24 |

LOCATIONS IN NEW JERSEY, NORTH CAROLINA, SOUTH CAROLINA, FLORIDA, LOUISANA, PENNSYLVANIA, GEORGIA, TEXAS AND CALIFORNIA

| Need Authorization | WE MAKE FRIENDS BY ACCIDENT | |
|--------------------|----------------------------|---|
| | | Subtotal |
| | | Sales Tax |
| | | Fees: |
| | | Total |

Trailco warrants all parts and labor for a period of 6 months (commencing the date on the invoice) as further defined herein. PARTS warranties are limited to the warranty supplied by the manufacturer/supplier. Trailco will perform all required manufacturer/supplier papers to activate the warranty. LABOR is warranted for the 6 month period.

Page 1